UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES MABEN,                              Case No.: 17-10817

       Plaintiff,                        Mark A. Goldsmith
v.                                       United States District Judge

JANET SHAHEEN,                           Stephanie Dawkins Davis
                                         United States Magistrate Judge

       Defendant.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (Dkt. 12) AND
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 19)**

## I.   PROCEDURAL HISTORY

Plaintiff brought this action *pro se* under 42 U.S.C. § 1983.  (Dkt. 1).

District Judge Mark A. Goldsmith referred pretrial matters in this case to the

undersigned on May 15, 2017.  (Dkt. 6).  On August 14, 2017, defendant Janet

Shaheen filed her motion for summary judgment.  (Dkt. 12).  Plaintiff filed his

motion for summary judgment on October 5, 2017.  (Dkt. 19).  Defendant

responded.  (Dkt. 21).  Plaintiff informed the Court that he had not received

defendant's motion, so on November 6, 2017, the undersigned ordered plaintiff to

respond to the motion and attached the motion to the Order.  (Dkt. 24).  Plaintiff

responded on December 12, 2017.  (Dkt. 28).  Defendant replied on December 20,

2017.  (Dkt. 30).

## II.     FACTUAL BACKGROUND AND PARTIES' ARGUMENTS

Plaintiff, James Maben, is a prisoner at the Central Michigan Correctional Facility ("SMT").  Defendant, Janet Shaheen, was the Assistant Resident Unit Specialist ("ARUS") in the unit where plaintiff was housed at the facility during the complaint period.  (Dkt. 1, Pg ID 2).  Plaintiff pursues one claim against defendant: First Amendment Retaliation.  (Dkt. 1; Dkt. 28, Pg ID 162).  Plaintiff alleges that on December 10, 2015 he attempted to send four documents as legal mail but that defendant improperly determined that his mail was not legal mail and refused to send it.  Shortly thereafter, plaintiff took the mail to ARUS Yell, who is assigned to a different unit; and Yell determined that the items were legal mail and processed them as such.  (Dkt. 1, ¶¶ 1-4).  According to plaintiff, after his mail was processed, defendant called plaintiff to her office and spoke "viciously" to him threatening to write him an "out of place" ticket.  (*Id.* at ¶ 6).  Plaintiff left defendant's office, but claims she summoned him back later that day at which time defendant showed plaintiff his pre-sentence report, and spoke in an "improper and derogatory" manner to him.  Specifically, plaintiff states that defendant called him a "violent mother fucker," noted that he was bipolar and not on medication, and stated further that she did not want him out of prison.  (*Id.* at ¶ 9).  One hour after ARUS Yell accepted plaintiff's mail to be sent as legal mail he was transferred to

another unit.  (*Id.* at ¶ 10).  Plaintiff claims that defendant lied when she said

plaintiff had been requesting the transfer.  (*Id.* at ¶ 11).  Plaintiff contends that

defendant caused his transfer in retaliation against his engagement in a protected

activity—i.e. sending legal mail—and avers that the transfer was intended to deter

a person of ordinary firmness from engaging in that protected activity.  (*Id.* at ¶ 15-

18).

      A.    <u>Defendant's Motion for Summary Judgment (Dkt. 12)</u>

In her motion, defendant does not contest that she determined that plaintiff's

mail was not legal mail and did not process it as such, and that ARUS Yell

processed the mail as legal mail shortly thereafter.  (Dkt. 12, at p. 2, 4).  Defendant,

however, does dispute that plaintiff's transfer was based on his requests to send

legal mail.  (*Id.* at p. 2).  She also denies that she spoke to defendant using abusive

language, insisting instead that she conducted herself in accordance with applicable

laws and MDOC policies.  (*Id.*).

Defendant construes plaintiff's complaint as bringing both a First

Amendment "legal mail" claim and a retaliation claim.  Defendant argues that

plaintiff has not established a legal mail claim.  (*Id.* at p. 3).  Defendant

acknowledges that a legal mail claim is a claim that a prison official, by interfering

with a prisoner's legal mail, interfered with that prisoner's ability to access the

courts.  (*Id.* at p. 3) (citing *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010)).

Plaintiff must provide some allegation that the prison official's conduct amounted to a denial of access to the courts. (*Id.*). Thus, according to defendant, a prisoner must establish that the official's interference resulted in prejudice to that prisoner. (*Id.*) (citing *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)). Defendant contends that plaintiff has failed to establish that he was prejudiced in any way by her failure to process his mail as legal mail. (*Id.* at p. 4). Indeed, his mail was processed as legal mail shortly thereafter by ARUS Yell. (*Id.*). Thus, even if defendant erred in determining the mail was not legal mail, the mail was delayed processing by a few moments, and there is nothing to suggest that plaintiff was prejudiced in any way. (*Id.*).

Defendant also argues that plaintiff has failed to establish a retaliation claim. To establish a prima facie case of First Amendment retaliation, plaintiff must demonstrate that: (1) he was engaged in a constitutionally protected activity; (2) he was subjected to adverse action that would deter a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action was motivated at least in part by plaintiff's protected activity. (*Id.*) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). Plaintiff alleges that defendant retaliated against his legal mail request by subjecting him to verbal abuse and transferring him. (*Id.*). However, according to defendant, neither of those acts constituted adverse action. (*Id.* at p. 5). Plaintiff has failed to establish that

defendant's alleged verbal abuse would deter a person of ordinary firmness from continuing to engage in that activity.  (*Id.*).  Further, a transfer is merely an ordinary incident of prison life.  (*Id.*).  Defendant argues that in most cases, a transfer to another institution does not constitute an adverse action, much less the transfer to another unit within the same facility.  (*Id.*) (citing *Siggers-El v. Barlow*, 412 F. 3d 693, 704 (6th Cir. 2005)).  Defendant acknowledges that the Sixth Circuit has carved out a narrow exception to the general rule where negative consequences "inextricably follow" from a transfer.  (*Id.*).  Examples of negative consequences are the loss of a high paying job and the reduced ability to meet with counsel.  (*Id.*).  However, defendant contends that none of these things happened in this case because plaintiff was transferred to a different unit, not a different facility.  (*Id.* at p. 6).  Moreover, plaintiff's transfer did not impact his ability to access the courts.  (*Id.*).

Defendant also argues that she is entitled to qualified immunity.  Defendant acknowledges that "the general framework for legal mail and retaliation claims are clearly established" but that the contours of the right must also be clearly established.  (*Id.* at p. 8).  Further, it is plaintiff's burden to establish that what the official did was objectively unreasonable in light of the clearly established constitutional rights.  (*Id.* at 9-10).  Defendant argues that plaintiff failed to support his claims with evidence, and also that the law was not clearly established that

failure to process legal mail is actionable per se without prejudice to the prisoner. (*Id.* at p. 10).  Similarly, she contends that the law was not clearly established that a transfer from one housing unit to another within the same prison constitutes an adverse action when it has no impact on a prisoner's ability to access the courts. (*Id.*).  Therefore, according to defendant, she is entitled to qualified immunity on plaintiff's claims.

Lastly, defendant argues that plaintiff cannot bring a § 1983 claim against her in her official capacity because, as an employee of a state agency (MDOC), she is a state officer.  (*Id.* at p. 11).  The Eleventh Amendment bars suit in federal court against a state, its agencies, and officials sued in their official capacity, unless this immunity is expressly waived by either the state or Congress.  (*Id.*) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 120 (1984)). Michigan has not consented to suit.  (*Id.*).  Further, § 1983 does not abrogate Eleventh Amendment immunity.  (*Id.*).  Accordingly, defendant asks that this Court dismiss the official capacity claims against defendant.  (*Id.*).

In response, plaintiff clarifies that he did not bring a legal mail claim, but rather only a retaliation claim.  (Dkt. 28, Pg ID 162).  Plaintiff argues that defendant provides only conclusory statements in response to his allegation that she falsely claimed that plaintiff requested the transfer.  (*Id.*).  According to plaintiff, even if he had requested the transfer, it was not a coincidence that his

transfer request was granted only moments after engaging in a protected activity. (*Id.*). Plaintiff contends that it is well established that he was engaging in a constitutionally protected activity in attempting to send and sending legal mail. (*Id.* at Pg ID 163). Plaintiff argues that defendant's reliance on *Siggers-El* is misplaced because the fact that he did not lose a paying job or visits with family ignores the fact that defendant acknowledges that his mail, which defendant declined to process as such, was ultimately processed as legal mail. (*Id.* at Pg ID 163-64). Plaintiff further contends that he was a model prisoner, providing with his complaint positive work and block reports. (*Id.* at Pg ID 164). Plaintiff insists that he has provided evidence that defendant's adverse action was taken at least in part because of the exercise of a protected activity and that defendant cannot show that she would have taken the same action absent the protected conduct. (*Id.*).

Consequently, plaintiff argues that he has satisfied the elements of a retaliation claim. First, he engaged in a protected activity, satisfying the first element. As to the second element, he argues that the adverse action need not be significant according to *Sigger v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). (*Id.* at Pg ID 165). According to plaintiff, there is nothing more stressful and punishing than an unwelcome transfer. (*Id.*). He states that he suffered the loss of trusted friends and fellow prisoners. (*Id.*). Further, being housed in an open cube style environment in the unit to which he was transferred, allowed other prisoners

to have ready access to him, which is intimidating. (*Id.*).  Consequently, his

transfer caused him to lose sleep, to fear, and to experience anxiety as well as

apprehension to approach staff regarding sending legal mail in the future. (*Id.*).

As to the third element, plaintiff states there is a question of fact whether the

adverse action was taken at least in part because of the exercise of a protected

activity. (*Id.*).

Finally, plaintiff argues that defendant is not entitled to qualified immunity

because she violated a clearly established right when she retaliated against

plaintiff. (*Id.* at Pg ID 165-66).  Plaintiff also argues that Eleventh Amendment

immunity does not apply to defendant because she acted unconstitutionally and is

thus stripped of her official character. (*Id.* at Pg ID 166)**.** [1]

B.    Plaintiff's Motion for Summary Judgment (Dkt. 19)

Plaintiff argues he is entitled to summary judgment because defendant

ignored this Court's deadline for filing a response to the complaint.  Defendant was

ordered to respond no later than August 14, 2017, but plaintiff contends that

defendant had not responded by the date of the filing of his motion on October 5,

2017.  (Dkt. 19, Pg ID 121).

---

[1] Within his response to defendant's motion for summary judgment, plaintiff also moved for a stay of summary judgment to allow for discovery concerning his claims.  Though including a motion within a response violates the Electronic Filing Policies and Procedures for the Eastern District of Michigan, R5(f), the undersigned declined to strike the motion portion of plaintiff's filing in view of the fact that he is not an ECF filer and the rule only appears in the Manual for Electronic Filers.  The motion was denied in a separate order.  (Dkt. 31).

In response, defendant states that she timely filed her response to plaintiff's complaint on August 14, 2017. (Dkt. 21, Pg ID 144). Defendant stated that she would include a copy of her motion for summary judgment with the mailing of her response as a courtesy. (*Id.* at Pg ID 145). Because she did timely file a response, she argues plaintiff's motion for summary judgment should be denied. Defendant also argued that her motion for summary judgment should be granted for the same reasons she presented in her motion. (*Id.* at Pg ID 145-46).

## III.    ANALYSIS AND RECOMMENDATIONS

### A.    Standard of Review

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d

433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

251-52 (1986).  Furthermore, the evidence and all reasonable inferences must be

construed in the light most favorable to the non-moving party.  *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

   Where the movant establishes the lack of a genuine issue of material fact,

the burden of demonstrating the existence of such an issue shifts to the non-moving

party to come forward with "specific facts showing that there is a genuine issue for

trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the party

opposing a motion for summary judgment must make an affirmative showing with

proper evidence and must "designate specific facts in affidavits, depositions, or

other factual material showing 'evidence on which the jury could reasonably find

for the plaintiff.'"  *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004).  In

order to fulfill this burden, the non-moving party need only demonstrate the

minimal standard that a jury could ostensibly find in his favor.  *Anderson*, 477 U.S.

at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

However, mere allegations or denials in the non-movant's pleadings will not

satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving

party.  *Anderson*, 477 U.S. at 248, 251.  Finally, if the nonmoving party fails to

make a sufficient showing on an essential element of its case with respect to which

it has the burden of proof, the movant is entitled to summary judgment.  *Celotex*,

477 U.S. at 323.

The Court may, in its discretion, grant summary judgment before discovery

has commenced where the decision on summary judgment is a purely legal

question.  *Bell v. Johnson,* 308 F.3d 594, 601 (6th Cir. 2002) ("qualified immunity

is a question of law").  Like qualified immunity, whether absolute immunity

applies is also a legal question.  *Moldowan v. City of Warren*, 578 F.3d 351, 374

(6th Cir. 2009).  "When a defendant invokes qualified immunity in a motion

for summary judgment, the plaintiff must offer sufficient evidence to create a

genuine dispute of fact that the defendant violated a clearly established

right."  *Folks v. Petit*, 676 Fed. Appx. 567, 569 (6th Cir. 2017) (citing *DiLuzio v.*

*Vill. of Yorkville*, 796 F.3d 604, 608–09 (6th Cir. 2015)).

B.     Defendant's Motion for Summary Judgment

Because plaintiff made clear that he did not bring a legal mail claim and

only brought a retaliation claim, the Court declines to address defendant's

arguments on the legal mail claim.

1.     First Amendment Retaliation

A prisoner retains First Amendment rights that are not inconsistent with his

status as a prisoner or with the legitimate penological objectives of the corrections

system.  *See Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Retaliation based on a

prisoner's exercise of his or her constitutional rights violates the Constitution.  *See*

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  To establish a First

Amendment retaliation claim, a plaintiff must prove that: (1) the plaintiff engaged

in activities protected by the Constitution or statute; (2) the defendant took an

adverse action that would deter a person of ordinary firmness from continuing to

engage in that conduct; and (3) that this adverse action was taken at least in part

because of the exercise of the protected conduct.  *Id.*

Even if plaintiff was engaged in protected conduct—sending legal mail, the

undersigned concludes that plaintiff has failed to show an adverse action as that

term applies in this context.  As the Sixth Circuit has observed, "[S]ince transfers

are common among prisons, ordinarily a transfer would not deter a prisoner of

ordinary firmness from continuing to engage in protected conduct."  *Siggers-El v.*

*Barlow*, 412 F.3d 693, 701–02 (6th Cir. 2005) (citing *Smith v.  Yarrow,* 78 Fed.

Appx. 529, 543–44 (6th Cir. 2003)).  On the other hand, where there are

aggravating factors, courts have been willing to find that a prison transfer would

deter a person of ordinary firmness.  *Id.* at 704.  For example, in *Siggers-El*, the

aggravating factors accompanying the transfer included the loss of a high paying

job needed to pay for the plaintiff's attorney (representing him in a direct appeal of

his criminal conviction), and increased difficulties for the plaintiff's attorney in

visiting with or representing the plaintiff because he was moved further away from her. *Id*. This limited exception applies "where there are foreseeable consequences to the transfer that would inhibit the prisoner's ability to access the courts." *Hix v. Tenn. Dept. of Corrections*, 196 Fed. Appx. 350, 358 (6th Cir. 2006) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005)). Where a prisoner alleges no such foreseeable consequences, however, the claim of retaliatory transfer must fail. *Id*. Additionally, a threat to transfer a prisoner to a more restrictive living environment with fewer privileges (e.g. a segregation unit) would also deter a person of ordinary firmness from exercising a constitutional right. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 398-399 (6th Cir. 1999) (adverse action found where prisoner alleged harassment, physical threats and a transfer to an area of the prison with squalid living conditions and populated with mentally-ill prisoners); *Hill v. Lappin*, 630 F.3d 468 (6th Cir. 2010) (prisoner's allegation of prison staff's threat and recommendation to transfer him to the lock-down unit at another facility constituted adverse action sufficient to defeat motion for dismissal); *King v. Zamiara*, 150 Fed. Appx. 485, 494 (6th Cir. 2005) ("Increasing [a prisoner's] custody security level was an adverse action because the result of more restrictions and fewer privileges could deter a person of ordinary firmness from engaging in protected conduct.); *Dunham-Bey v. Holden*, 198 F.3d 244 (6th Cir. 1999) (the "repeated filing of false disciplinary charges and placement in administrative

13

segregation could deter a person of ordinary firmness from exercising his First Amendment rights.").

Here, plaintiff does not allege or argue such foreseeable consequences, and does not claim that his internal transfer resulted in a more restrictive living environment.  Instead, he argues that his transfer amounted to adverse action because he suffered the loss of trusted friends, lost sleep and experienced fear and anxiety after being moved to a new open-cube environment.  (Dkt. 28, Pg ID 165).  There is also no allegation or indication that his transfer to another unit caused any limitations in his access to the courts.  In fact, plaintiff has filed many documents with the court since filing his complaint.  (*See* Dkts, 13, 17, 19, 22, 25, 26, 28).

The change in circumstances that plaintiff contends resulted from his transfer simply does not reach constitutional proportions.  Plaintiff's allegations are analogous to those of the plaintiff in *Henly v. Miller*, 2013 WL 1305285 (W.D. Mich. Mar. 6, 2013), where the plaintiff argued that his transfer to another prison facility was retaliatory and amounted to an adverse action.  The plaintiff in *Henley* claimed that due to his transfer he suffered damages including; (1) living arrangements that interfered with his ability to study and sleep; (2) the possibility that he may go years without a job; (3) loss of wages affecting his ability to pay an attorney and to call family; and (4) that he was routinely hungry and anxiety-ridden.  *Id.* at *6.  The court held that these negative consequences are not the sort

14

that would prevent the plaintiff from engaging in protected conduct. *Id.* at *7. The court further stated that if it construed the changes in his living conditions listed above as sufficient to support a cause of action for retaliatory transfer, "then virtually every unwanted prison transfer could be contested on this basis. In short, the *Siggers–El* exception allowing retaliatory transfer actions in exceptional cases would swallow the general rule prohibiting such actions." *Id.*

As discussed, plaintiff claims adverse action for his transfer based on the facts that he lost trusted friends, suffered sleep loss, fear and anxiety in the new unit. There are no additional claims such as the loss of a job, loss of wages to pay an attorney, and loss of contact with family as in *Henley*. If all of the losses the plaintiff in *Henley* suffered were insufficient to deter a person of ordinary firmness from engaging in protected activity, then the losses the plaintiff here claims are also not enough to deter a person of ordinary firmness from engaging in protected activity.

The undersigned has also taken into consideration defendant's statements (as alleged in plaintiff's complaint) that she would write a Class I ticket against plaintiff so the parole board would see it and that she would "make it stick," and that plaintiff is a "violent mother fucker" who does not take medication and who she does not want out of prison. (Dkt. 1, ¶¶ 6, 9). Although these statements give pause, they do not rise to the level of an adverse action. In *Jackson v. Madery*, 158

Fed. Appx. 656, 661 (6th Cir. 2005), the Sixth Circuit held that the plaintiff had not made out a retaliation claim because, even in the aggregate, the alleged retaliatory acts did not amount to adverse action.  The plaintiff there alleged that the defendant committed sexual abuse against him by briefly touching him inappropriately and had threatened the plaintiff by saying "Don't you know better that [sic] to sue JCF's prison guard(s) ... We sill [sic] get you, its [sic] just a matter of time ... There is a graveyard right across the street, so you won't have to travel far ... Wait until you get a whiff of my unit reports." (elipses in original).  *Id.* at 660-62.  These actions, according to the court, would not deter a person of ordinary firmness from pursuing a lawsuit or administrative grievances.  *Id.* at 662.  Further, defendant's alleged threat to issue a ticket to show the parole board is insufficient. *Wicks v. Rubitschun*, 2009 WL 1974395, at *4 (W.D. Mich. July 6, 2009) (holding that a correction's officer's statement or threat about the likelihood of release on parole in response to the prisoner's indication that he would file a grievance and a lawsuit cannot by itself be considered adverse action where the power to grant parole rests with the parole board, not the corrections officers); *see also Griffin v. Berghuis*, 2016 WL 1165826, at *7 (E.D. Mich. Jan. 3, 2016), *report and recommendation adopted*, 2016 WL 1161503 (E.D. Mich. Mar. 24, 2016) (threat of issuing false misconduct tickets amounted to adverse action when combined

with a proven false misconduct ticket, an allegedly false misconduct ticket, and threats of physical harm).

If in *Jackson* a threat of physical harm (perhaps death) combined with sexual abuse was not adverse action, then even viewing the facts in the light most favorable to plaintiff, the threat of writing a Class I misconduct ticket, followed later with calling plaintiff a "violent mother fucker" who does not take medication and who she does not want out of prison, while perhaps uncharitable and unprofessional, does not amount to adverse action either. *See also*, *Willis v. Draper*, 2010 WL 1875704, at *8 (E.D. Tenn. May 10, 2010) (threat of physical harm followed by delay in processing legal mail not adverse action). This is particularly true, where, as here notwithstanding the defendant's negative language, plaintiff's legal mail was promptly and successfully processed by ARUS Yell when plaintiff presented it to him.

Plaintiff's reliance on *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997) does not help his cause. Plaintiff cites it for the proposition that an injury need not be significant. (Dkt. 28, Pg. ID 165). However, the *Siglar* court was addressing physical injury in the context of a claim for excessive force by prison guards in violation of the Eighth Amendment – not adverse action in the context of a First Amendment retaliation claim. As observed by the Sixth Circuit, "[p]risoners may be required to tolerate more than public employees, who may be required to

tolerate more than the average citizens, before an action taken against them is considered adverse." *Thaddeus-X*, 175 F.3d at 398.  As discussed, the appropriate standard is whether the alleged retaliatory conduct "is capable of deterring a person of ordinary firmness from exercising his or her [constitutional right]." *Id.*

In short, because plaintiff has failed to establish that he suffered adverse action that would deter a person of ordinary firmness from engaging in protected activity, his claim for First Amendment retaliation fails; and the failure of this substantive claim also necessarily entitles defendant to qualified immunity as explained more fully below.  Therefore, the undersigned recommends that defendant be granted summary judgment on plaintiff's retaliation claim in its entirety.

2.   <u>Qualified Immunity</u>

The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Defendants bear the burden of pleading qualified immunity, but plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his or her

position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (citation omitted) (explaining that "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity").

The Supreme Court has established a two-part test in order to determine whether qualified immunity is applicable to a particular situation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The first part of the test involves a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id*.  If the first question was resolved in the affirmative, then the court would decide "whether the right was clearly established." *Id*.  If both questions resolved in the affirmative, then the doctrine of qualified immunity would not apply and the case could proceed.  Conversely, if the answer to either question is no, then qualified immunity obtains. The court may consider the questions in whichever order the court concludes makes the most sense. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009).

In the instant case, the Court has considered the first question and, as discussed above, plaintiff's claim fails to meet the first part of the test:  That is, viewing the facts in the light most favorable to plaintiff, he has not shown that

defendant's conduct violated a constitutional right.  Therefore, the inquiry need

proceed no further and defendant is entitled to qualified immunity.

3.   Eleventh Amendment Immunity

Though perhaps unnecessary to the final resolution of plaintiff's claims in

view of the above recommendations, for the sake of completeness, the undersigned

here addresses defendant's final ground for dismissal.  Defendant claims Eleventh

Amendment immunity.  In response, plaintiff asserts that defendant is not entitled

to such immunity because she acted "unconstitutionally."

The state or one of the state's departments enjoys immunity under the

Eleventh Amendment from suits for money damages in the federal courts, unless

the state has waived immunity or Congress has expressly abrogated Eleventh

Amendment immunity by statute.  *Kitchen v. Leach*, 2017 WL 1905871, at *8

(W.D. Mich. May 10, 2017) (citing *Pennhurst State Sch. & Hosp. v. Halderman*,

465 U.S. 89, 98-101 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir.

1993)).  Eleventh Amendment immunity extends to damages claims against state

officials sued in their official capacity.  *See Kentucky v. Graham*, 473 U.S. 159,

169 (1985) ("This [Eleventh Amendment] bar remains in effect when State

officials are sued for damages in their official capacity.").  As explained in *Kitchen

v. Leach*, Congress has not expressly abrogated Eleventh Amendment immunity by

statute with respect to § 1983, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the

State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986); *see also McCrary v. Ohio Dep't of Human Servs.*, 2000 WL 1140750, at *3 (6th Cir. Aug. 8, 2000) (finding § 1983 and § 1985 claims against state agency and its employees in their official capacities for damages barred by Eleventh Amendment immunity). Thus, plaintiff cannot bring a § 1983 suit for money damages against defendant in her official capacity. Since plaintiff's sole claim for relief in this case is for monetary damages (Dkt. 1, Pg ID 4), defendant is also protected from suit in her official capacity by Eleventh Amendment immunity.

B    Plaintiff's Motion for Summary Judgment

Plaintiff brought this motion solely on the basis that he believes defendant failed to respond to his complaint as ordered by the Court. (Dkt. 19). However, defendant did timely respond by filing her motion for summary judgment on August 14, 2017. (Dkt. 12). Included in her motion is a certificate of service indicating that the motion was mailed to plaintiff at his prison address. (*Id.* at p. 13). Because defendant did timely respond, and because the undersigned recommends summary judgment for the defendant for the reasons stated above, plaintiff is not entitled to summary judgment.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant's motion for summary judgment (Dkt. 12) be **GRANTED** and plaintiff's motion for summary judgment (Dkt. 19) be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  January 31, 2018                              s/Stephanie Dawkins Davis
                                                     Stephanie Dawkins Davis
                                                     United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on January 31, 2018, I electronically field the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant: James Maben #300475, Thumb Correctional Facility, 3225 John Conley Drive, Lapeer, MI 48446.

                                                     s/Tammy Hallwood
                                                     Case Manager
                                                     (810) 341-7887
                                                     tammy_hallwood@mied.uscourts.gov